James T. YOUNG, Plaintiff–Appellee,

v.

Louis W. SULLIVAN, M.D.,*
Defendant–Appellant.

No. 88–15656.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1990.

Memorandum May 3, 1990.

Order and Opinion Aug. 7, 1990.

* Louis W. Sullivan, M.D., is substituted for his predecessor, Otis R. Bowen, M.D., as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

Judith A. Waltz, argued; David R. Mazzi, Asst. Regional Counsels, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellant.

Frank J. Reilly, Neyhart, Anderson, Nussbaum, Reilly & Frietas, San Francisco, Cal., for plaintiff-appellee.

Before CHOY, THOMPSON and TROTT, Circuit Judges.

## ORDER

The memorandum filed May 3, 1990, 902 F.2d 42, is amended and redesignated as an opinion, authored by Judge Choy.

## OPINION

CHOY, Circuit Judge:

This case involves a dispute between Appellant Secretary of Health and Human Services ("Secretary"), and Appellee James T. Young about whether Young was permanently disabled within the period of his coverage. After a hearing, an administrative law judge (ALJ) denied Young permanent disability benefits. The Appeals Council affirmed the ALJ opinion, thereby making it the final decision of the Secretary. On judicial review, the district court reversed the ALJ and held that Young was *per se* disabled because his impairment was severe and was one of the listed impairments that compel a finding of permanent disability. The Secretary timely appealed.

We reverse the ruling of the district court. It is not enough for an applicant to show he has a severe impairment that is one of the listed impairments to find him *per se* disabled. An applicant must show that his impairment meets or equals the severity and durational requirements for the applicable impairment. *Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir.1985).

Because the ALJ's finding that Young's impairment did not meet or equal the severity required for a finding of *per se* disability was supported by substantial evidence, we reinstate that finding. Further, the ALJ's analysis through the final two steps of the process used to determine eligibility was also free from legal error and sup-

ported by substantial evidence. We therefore reverse the district court's ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

Young was born on January 13, 1939. He has the equivalent of a high school education (10th grade plus GED) and has completed training courses in basic electricity and real estate. He has worked as a linesman supervisor and troubleshooter for a utility company. Young was last insured for disability insurance benefits on September 30, 1982.

Young sustained a fracture of the left femur on May 12, 1976.[1] He has not worked since this injury. His recovery was complicated by phlebitis in the left limb. In November, 1977, Young was diagnosed as having deep venous insufficiency with stasis dermatitis and edema. According to the notes of Young's treating physician, two small ulcerations developed around the end of February or beginning of March 1980. They had healed by March 1981. As of November 30, 1981, there had been no recurrence of ulceration. On April 6, 1982, an examination of the left knee showed mild crepitation and some grating on flexion and extension.

Several reports postdated Young's insured status. A rehabilitation assessment performed on November 22, 1982 recommended that Young not be found permanently disabled. In December, 1982, a medical examination revealed tenderness and reduced active range of motion in the left knee, some pitting edema (place where pressure was focused would remain indented for a short period) in the lower left leg, and phlebitis. In a 1983 deposition, Young's treating physician opined that Young should not sit for more than 30 minutes or stand in one spot for more than 15 minutes.

In May, 1983 a Dr. Marvin H. Lipton performed an orthopedic evaluation of Young at Young's lawyer's request. He reported some thickening of the soft tissue and chronic synovitis (inflammation of synoval tissue which resembles ligaments and is located in joints such as the knee). In April, 1984, Young's treating physician reported that Young had experienced acute exacerbations of stasis ulceration in September of 1983 and March of 1984. In June, 1984, the Workers' Compensation Appeals Board (WCAB) found Young 100% disabled.

Young testified before the ALJ that he experienced excessive swelling of his left leg, pain in his left leg, ankle, knee, and hip, and was unable to walk more than a couple of blocks. He claimed to experience discomfort upon sitting more than 15 minutes and that he needed to elevate his leg for a half hour at a time four times a day. Young testified that his condition had been the same over the last five or six years.

Young drove about 100 miles per week to visit friends and his wife at work, to a coffee shop, the marina, and to visit his daughter. He also mowed the lawn, washed the dishes, vacuumed the house, and assisted with the grocery shopping.

The parties agreed at Young's hearing before the ALJ that Young was not working and suffered from a serious impairment, chronic venous insufficiency. They disagreed about whether Young was *per se* disabled under 20 C.F.R. Appendix 1, Subpart P, § 4.12. This section reads in its entirety:

> 4.12 *Chronic Venous Insufficiency* of the lower extremity with incompetency or obstruction of the deep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy.

If Young's impairment either met or equaled the severity and durational requirements of § 4.12, then he should have been

---

1. The medical summary here is not as extensive as the summaries contained in the briefs, which we analyzed thoroughly before making our decision. This summary is meant to provide a rough chronology of the medical evaluations and when each different disorder or symptom was first diagnosed.

held presumptively disabled without consideration of his age, education, and work experience. 20 C.F.R. § 404.1520.

The ALJ held that Young's disability status could not be determined by his work status and medical evidence alone. Presumably what the ALJ meant was that Young cleared the first two hurdles required to obtain benefits (he was not working and he suffered from a severe impairment), but that he did not clear the third hurdle (presumptive disability under 20 C.F.R. § 404.1520) because he failed to show that his disability met or equaled the severity required of any impairment on the List of Impairments. The ALJ thus held that Young was not *per se* disabled, and proceeded to the next step in the sequential process used to determine eligibility for permanent disability benefits.

The parties agreed concerning the fourth step of the eligibility process; Young could not perform his previous work. The ALJ thus proceeded to the fifth and final step in the eligibility determination process, which is whether a claimant is capable of performing a sufficient number of jobs available in substantial numbers in the national economy. The ALJ determined that the Medical–Vocational Guidelines, or "grids," did not apply because Young could not perform the full range of light and sedentary work. The ALJ used the grids as a "framework," however, for deciding Young's disability status.

A vocational expert testified at the hearing. He opined that assuming Young could sit no more than 30 minutes at a time, stand in one place for more than 10 minutes at a time, and would need to have the opportunity to walk, sit, and stand at his own discretion, Young could perform numerous jobs available in substantial numbers in the national economy. The ALJ denied Young's request for permanent disability benefits. The Appeals Council affirmed the ALJ decision, thereby making it the final decision of the Secretary.

On judicial review, the district court held that the ALJ had erred either by not finding Young presumptively disabled, or by ignoring the fact that once a claimant is presumptively disabled, an ALJ must award benefits. The district court, after reviewing the record, found that Young suffered from "chronic venous insufficiency which is a *per se* disability under Appendix 1, Subpart P, § 4.12. Moreover, [both parties] agree that plaintiff has been diagnosed as such." The court concluded:

There is really no dispute about the plaintiff's condition or the medical diagnosis. All the treating physicians (and they are numerous) agree that plaintiff has chronic deep venous insufficiency of the lower extremity and its accompanying conditions. We are nonplussed as to what the ALJ could have been thinking in ignoring plaintiff's *per se* disability. Once a *per se* disability is established, the ALJ has no discretion; he must award benefits.

## STANDARD OF REVIEW

 We review the district court order of summary judgment de novo. *Paulson v. Bowen*, 836 F.2d 1249, 1250 (9th Cir. 1988). In reviewing the ALJ's denial of disability benefits, we review the findings to make sure the ALJ applied the correct legal standards and review the entire record to insure that the findings are supported by substantial evidence. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

Substantial evidence means " 'more than a mere scintilla,' *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but 'less than a preponderance,' *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988)." *McAllister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.1989). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427.

## DISCUSSION

### I.

 The mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, § 4.12 is not sufficient to sustain a finding of disability. While the Listing of

Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a claimant's "impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment." 20 C.F.R. § 404.1525(d); *Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir.1985). The regulation is not as clear as it should be. What it means is that a claimant may have a listed impairment without being presumptively disabled if the claimant's impairment is not as severe as required under the findings for that impairment, or if the claimant has not had the impairment or a particular symptom for as long as the findings require.

The district court stated that there was really no dispute that Young suffered from chronic venous insufficiency and its accompanying conditions and that the ALJ simply ignored his *per se* disability. Rather than remand for a determination of whether Young's chronic venous insufficiency met or equaled the durational and severity requirements of § 4.12, the district court ordered a finding of permanent disability.

The district court erred. There is no evidence to show that the ALJ dispensed with the *per se* analysis required in the regulations. In this case, the ALJ stated that Young's employment status and the medical evidence could not resolve the disability issue. The ALJ then held that Young's impairments did not meet or equal in severity any impairments in the Listing of Impairments in Appendix 1 to Subpart P, and concluded that Young was not presumptively disabled. There is nothing to suggest that the ALJ thought Young had shown that his impairment met or equaled the requirements under § 4.12 of Appendix 1 but chose to proceed to the next step anyway. After continuing through the final two steps in the eligibility determination process, the ALJ found that Young was still able to perform numerous jobs available in significant numbers in the national economy. Thus, the ALJ denied Young permanent disability status.

■ Neither the district court nor this court can substitute its own determination of what the evidence shows for the ALJ's if there is sufficient evidence to support the ALJ's outcome. *Key*, 754 F.2d at 1549. Therefore, the district court should have affirmed unless it found that the ALJ's finding was not supported by substantial evidence. The district court did not find this, however; instead, it held that there was substantial evidence to support a finding of presumptive disability. Further, the district court does not indicate anywhere in its ruling that it realized that the determinative issue was not whether Young was currently suffering from chronic venous insufficiency "and all its accompanying conditions," but whether Young met the Listing's requirements during his coverage period.

■ Whether Young's chronic venous insufficiency met or equaled the severity and durational requirements of § 4.12 during the time of his insurance coverage is a close question. It appears that Young satisfied all of the requirements under the listing during his coverage period except a medical finding of "extensive brawny edema." Young attempts to characterize the Secretary's emphasis on this point as hypertechnical. It is reasonable to infer, however, that this symptom is required under the listing for chronic venous insufficiency because it may provide an indication of the chronicity or the severity of a claimant's impairment.

Indeed, while it is difficult to tell from a review of the record exactly how debilitating Young's chronic venous insufficiency was during the coverage period, physicians for Young, who diagnosed many of the symptoms necessary for a finding of *per se* disability, stated that they thought he could return to some type of gainful employment. Thus there is no indication that the ALJ acted hypertechnically and ignored the reality of Young's situation when she denied him presumptive disability status. Extensive brawny edema is a required finding for chronic venous insufficiency under the Listing of Impairments. The ALJ is no more able to ignore specific requirements

than she is able to add new ones. *Pitzer v. Sullivan*, 908 F.2d 502, 505 (9th Cir.1990).

## II.

Finally, Young makes several arguments in his brief in addition to the primary claim that he met the requirements for chronic venous insufficiency under the Listing of Impairments. Most of these claims have the common flaw of ignoring this court's standard of review of the Secretary's decision.

Young first argues that if he does not have the exact findings required for a determination of presumptive disability due to chronic venous insufficiency, then his impairment certainly equals the impairment listed in § 4.12. We have determined that there is substantial evidence in the record to support the ALJ's finding that Young's impairments did not meet or equal the severity requirements of any impairment listed in the Appendix.[2]

Next, while admitting that the state WCAB finding of total disability does not bind the ALJ, Young argues that this decision and findings from medical examinations subsequent to Young's coverage period should have been considered. Further, Young argues that the district court properly considered such evidence when it found that he was presumptively disabled. This argument is ineffective for two reasons.

■ First, the ALJ did consider the WCAB decision and subsequent medical evaluations. Young cannot claim legal error merely because the ALJ saw the evidence differently from the WCAB or thought that the difference in the relevant coverage period made the WCAB reasoning inapplicable to the question she had to decide. 20 C.F.R. § 404.1504 (1988); *Wilson v. Heckler*, 761 F.2d 1383, 1385 (9th Cir. 1985). Second, the fact that the district court independently may have considered this evidence more persuasive than the ALJ did is irrelevant to whether the ALJ's decision is free of legal error and supported by substantial evidence. We review the district court's decision de novo and the ALJ's determination under the substantial evidence test. Neither the district court nor we are allowed to choose between supportable factual findings when the ALJ's determination has substantial support in the record.

■ Young also argues that the ALJ was wrong to use the Medical–Vocational Guidelines as a framework for determining his eligibility for permanent disability status. This argument lacks merit. The ALJ had a vocational expert testify because the Medical–Vocational Guidelines could not be used to determine Young's disability status, and relied on the expert's testimony to render her decision. In addition, the ALJ stated that, as a framework for decision making, Young's profile closely approximated a profile in the Guidelines that would require a finding of "not disabled." The ALJ did not impermissibly rely on the Guidelines.

We also find unpersuasive the remaining arguments Young makes in his brief. The information provided to the vocational expert was sufficient for the expert to render his opinion, and his listing of possible occupations Young could perform were not unreasonable. Indeed, the actual jobs listed by the expert were not even attacked by Young in his brief. Thus, the testimony of the vocational expert that Young was able to perform several occupations available in significant numbers in the national economy was legitimate evidence and could sup-

2. We are aware of the recent decision of this court in *Marcia v. Sullivan*, 900 F.2d 172 (1990). *Marcia* held that an ALJ must provide an adequate explanation for refusing to find equivalency when a required symptom is shown by an alternative diagnostic test or when a claimant asserts disability based on the combined effect of various impairments. This case does not involve the refusal to credit a finding made by an alternative diagnostic technique or multiple impairments. Therefore, we find that the circumstances of this case make more detailed findings regarding equivalence unnecessary. We are satisfied that the ALJ went through the proper sequential steps, applied the correct legal standards, and carefully considered her decision in light of all relevant facts. Further, the record was sufficient for us to review meaningfully the ALJ's decision.

port the ALJ's finding of "no disability." *Martinez v. Heckler,* 807 F.2d 771, 774–75 (9th Cir.1987).

## CONCLUSION

We REVERSE the judgment of the district court and REINSTATE the Secretary's decision.