959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edmund FREMONT, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Louis W. Sullivan, Secretary of
Health and Human Services, Defendant-Appellee.
 No. 90-56076.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided April 7, 1992.
 
 1
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Between September of 1984 and December of 1987 the appellant, Edmund Fremont ("Fremont"), received an overpayment of spousal social security benefits totalling $5,616.90. Fremont's benefits should have been offset by his government pension. When the Social Security Administration ("SSA") sought to recover the overpayment, Fremont requested a waiver, alleging that he was "without fault" for the overpayment. The Administrative Law Judge, and the Appeals Council of the SSA, found that Fremont was not without fault because he should have notified the SSA of his receipt of the government pension. Fremont appealed to the district court. After an oral hearing, the district court upheld the SSA's determination on a summary judgment motion. Fremont appeals this judgment.
 
 
 4
 After a careful review of the record, we conclude that there is not substantial evidence to find Fremont at fault for the overpayment. We also find that equity and good conscience will best be served by waiving recovery of the overpayment. Therefore, we reverse the district court and grant Mr. Fremont a waiver from repayment.
 
 FACTS
 
 5
 The Appellant, Edmund Fremont, was born on August 28, 1911. He received a license to practice medicine in 1944. He served in the United States Army from 1944 to 1946 and then worked as a physician for the Veterans Administration until he retired on September 3, 1984.
 
 
 6
 On July 24, 1980, Fremont accompanied his wife, who was applying for benefits, to the local SSA office. The SSA representative handling his wife's case asked why Fremont was not applying for husband's benefits. Fremont told the representative that he was working for the Veterans Administration and someday would retire and receive a government pension. The representative told Fremont he was entitled to benefits and Fremont began receiving monthly benefits of $53.80 in September of 1980.
 
 
 7
 Fremont admits that he signed his application for benefits, but alleges that he did not read the application. A notice on the four-page application read: "I AGREE TO PROMPTLY NOTIFY the Social Security Administration if I begin to receive a government pension or annuity, based on my own earnings, from the federal government or any state (or political subdivision thereof) or if my present government pension or annuity amount changes." Fremont claims he relied on the information given to him by the SSA representative, rather than examining the application form.
 
 
 8
 After Fremont retired on September 3, 1984, he began receiving his government pension on September 4, 1984. He should then have notified the SSA, so it could have properly offset his pension.
 
 
 9
 On October 2, 1987, the SSA notified Fremont that it intended to reduce his benefits because of the mistaken overpayment. Fremont requested a hearing challenging the substantive grounds for the offset (the propriety of the offset is no longer contested). The Administrative Law Judge ("ALJ") issued an unfavorable decision on June 18, 1988, which did not address the issue of waiver of the recovery of the overpayment. Fremont requested a waiver from the SSA, which was denied on March 18, 1988. Fremont appealed, and the ALJ issued a second opinion denying the request for waiver on July 31, 1988. In his decision the ALJ "note[d] that Federal employees were notified by their agencies of the pension offset provisions on numerous occasions. Claimant is an individual with an excellent education and would certainly have been aware of the notices." The ALJ also made a finding that Fremont was "at fault in causing the overpayment."
 
 
 10
 On appeal, the Appeals Council affirmed the decision of the ALJ, but appeared to find fault mostly because Fremont should have been aware of his duty to report his pension from the information on the original application. Fremont appealed to the district court, which upheld the SSA determination.
 
 STANDARD OF REVIEW
 
 11
 The district court's grant of summary judgment is reviewed de novo. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.1990). However, the SSA's factual findings must be upheld if the findings are supported by substantial evidence. Id. "Substantial evidence means 'more than a mere scintilla,' but 'less than a preponderance.' " Id. (citations omitted). It is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Of course, the court must carefully consider the entire record, weighing all the evidence. See Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.1988).
 
 DISCUSSION
 
 12
 I. The Decision of the SSA that Fremont Was "Not Without Fault" for the Overpayment Was Not Supported by Substantial Evidence
 
 
 13
 Recovery of a social security overpayment will be waived if the recipient of the overpayment was without fault and recovery of the overpayment would be against equity and good conscience. 42 U.S.C. § 404(b). Fault is found where the recipient:
 
 
 14
 (b) Fail[ed] to furnish information which he knew or should have known to be material; or
 
 
 15
 (c) ... [A]ccept[ed] a payment which he either knew or could have been expected to know was incorrect.
 
 
 16
 20 C.F.R. § 404.507 (1991). In making this determination all the circumstances, including the recipient's age, intelligence, education, and physical and mental condition must be considered. See 42 U.S.C. § 404(b); 20 C.F.R. § 404.507 (1991). The burden is on Fremont to show he is without fault. Anderson v. Sullivan, 914 F.2d 1121, 1122 (9th Cir.1990).
 
 
 17
 In his decision to deny Fremont's request for a waiver, the ALJ appeared to base his finding on the ALJ's personal awareness that federal employees received notice of pension offset provisions on many occasions. The ALJ concluded that Fremont "would certainly have been aware" of these notices and thus was at fault for not notifying the SSA of his government pension.
 
 
 18
 The ALJ's use of his personal knowledge of the notification to federal employees was improper. The hearing regulations specify that, "The decision must be made based on evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a) (1991). Nowhere in the record is there evidence to substantiate the ALJ's belief that federal employees were notified of their responsibility to report pension offsets. Indeed, the government conceded at oral argument that there "was nothing in the record" about these alleged notices to federal employees.
 
 
 19
 In its decision upholding the ALJ, the Appeals Council relied on different evidence. The Council noted the fact that the application form Fremont signed included information directing the recipient of benefits to furnish any information about receipt of a government pension to the SSA. Because the Appeals Council found that Fremont did not bring his receipt of the government pension to the attention of the SSA, the Council found him at fault for the overpayment. This evidence was properly part of the record. In reviewing for substantial evidence, the Appeals Council's decision is also considered because it is the final decision of the Secretary regarding a claim and it is the Secretary's decision that is reviewed. See Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985).
 
 
 20
 Thus, the issue boils down to whether the SSA's finding that Fremont should be charged with knowledge of the information on the application is substantial evidence to find Fremont at fault for "not furnishing information which he knew or should have known to be material." 20 C.F.R. § 404.507(b) (1991).
 
 
 21
 SSA argues that Fremont should be charged with the notice on the application he signed in 1980 and found to be at fault for not notifying the government when he began to receive his pension in 1984. We conclude, however, that this is insufficient reason to find Fremont at fault. The notice on the application was one paragraph out of four pages. Fremont did not complete the application himself; it was filled out by the SSA representative assisting Fremont. There is no other evidence in the record that Fremont did not furnish any other information requested by the SSA. Without more evidence, it is unrealistic to hold Fremont responsible in 1984 for the notice on a lengthy application he signed in 1980.
 
 
 22
 Some courts have charged recipients of benefits with notice of information contained in the application forms the recipients signed. See Chapman v. Bowen, 810 F.2d 151, 152 (8th Cir.1986); Stallings v. Bowen, 673 F.Supp. 884, 886 (E.D.Mich.1987). In Chapman, however, the recipient's duty to report information arose immediately. 810 F.2d at 152. Thus, there was more reason to hold him responsible and find him at fault for not furnishing the requested information. Similarly, in Stallings, in addition to the notice she was charged with from her application, the recipient admitted receiving a number of "stuffers" alerting her to her responsibility to furnish information to SSA. 673 F.Supp. at 885. She testified that "she thought the information did not apply to her so she disregarded the notices." Id.
 
 
 23
 Other courts have recognized that the notice of reporting requirements contained in an initial application for benefits may not be sufficient evidence to find a recipient at fault for an overpayment. See Jefferson v. Bowen, 794 F.2d 631, 633 (11th Cir.1986) (only notice of reporting requirements beneficiary received was in her initial application and the beneficiary had only a fourth grade education and possessed minimal literacy). Furthermore, we have recognized that " '[T]he decision which must be reached in a fault determination is highly subjective, highly dependent upon the state of mind of the claimant and the peculiar circumstances of his situation.' " Harrison v. Heckler, 746 F.2d 480, 482 (9th Cir.1984) (citation omitted).
 
 
 24
 Congress has chosen to waive recovery of overpayments when the recipient of the overpayment is not at fault. 42 U.S.C. § 404(b). Congress could have chosen not to allow waivers. We find that under the circumstances here Fremont was not "at fault." This is the type of situation and inadvertent receipt of an overpayment that Congress provided for in the statute.
 
 
 25
 II. Recovery of the Overpayment Would Be Against Equity and Good Conscience
 
 
 26
 Even though we find that Fremont is without fault, Fremont must also show that recovering the overpayment would be "against equity and good conscience." 42 U.S.C. § 404(b). According to the SSA regulations, equity and good conscience are limited to three specific situations. 20 C.F.R. § 404.509(a) (1991). The Ninth Circuit, however, has followed the Eighth Circuit and ruled that "the phrase 'against equity and good conscience' cannot be limited to the three narrow definitions" in the SSA regulations because the regulations do not comport with the ordinary meaning of the statute. Quinlivan v. Sullivan, 916 F.2d 524, 527 (9th Cir.1990). Instead, "courts must apply cautiously the equity and good conscience standard to the circumstances of each case" according to the ordinary meaning of the language. Id.
 
 
 27
 The ALJ found that it would not be against equity and good conscience to reduce the future benefits payable to Fremont and his wife to recover the overpayment of $5,616.90. Apparently this was because at the 1988 hearing the Fremonts testified that they had income from a rental condominium, savings of $8,000 or $9,000, and a long-term Certificate of Deposit worth about $5,000. This also led the district court to conclude that Fremont "would suffer no hardship in reimbursing the overpayment."
 
 
 28
 Quinlivan, 916 F.2d at 526, and Groseclose v. Bowen, 809 F.2d 502, 505-06 (8th Cir.1987), direct that the court apply the ordinary meaning of "equity and good conscience" and "draw upon precepts of justice and morality." Following these conceptions of equity, we conclude that it would be against equity and good conscience to recover from the Fremonts. The Fremonts are an elderly couple, who generally appear to be living on a fixed income. The overpayment occurred over a period of years, and only totalled about $53.90 per month. The SSA was in part responsible for the error. Equity is better served by waiving recovery.
 
 CONCLUSION
 
 29
 We find Fremont to be "without fault" for the overpayment and that recovery of the overpayment would be against equity and good conscience. Therefore, the district court's decision is REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3