70 F.3d 120
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sherry NILSON, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of the Social Security
Administration** Defendant-Appellee.
 No. 94-35628.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 18, 1995.*
Decided Nov. 6, 1995.
 
 Before: REINHARDT, and TROTT, Circuit Judges, and SCHWARZER, District Judge.***
 MEMORANDUMd
 Overview
 The issue in this case is whether substantial evidence in the record supports the Commissioner's final administrative decision that plaintiff, Sherry Nilson, was not entitled to social security disability benefits under 42 U.S.C. Secs. 401-33. Nilson appeals from the district court's order granting the Commissioner's motion for summary judgment and denying her motion for summary judgment.[1] We reverse and remand for further consideration by the Administrative Law Judge (ALJ) principally because he did not set forth sufficient reasons to reject the latest opinion of Dr. Dorr, a treating physician, who was the only doctor to review Nilson's most recent MRI results.
 Facts and Procedural History
 Claimant, Sherry Nilson, was twenty when she first reported back pain in 1983 following an automobile accident. She claimed to be disabled due to back injuries and back pain in 1986. She alleges that the primary cause of her "severe impairment" was a 1986 injury from lifting a heavy grating while working for Montana Power. She subsequently returned to work but injured herself again a number of times. She claims that after these incidents, she had sharp pains in her lower back, burning pain radiating into her legs, and numbness in her feet. She has not worked since November, 1989.
 Medical Reports
 Nilson first saw Dr. Dorr, an orthopedic surgeon and one of two treating physicians, in 1985. In July 1986 she returned following her on-the-job accident complaining of continuing trouble with her back. He found that she had "persistent back abnormalities with absence of posterior elements of L5 and marked narrowing at the L4-5 [in the spine]," and a mechanically unstable back.
 In March 1987, Nilson began seeing Dr. Arazi, a neurologist, on a regular basis. He found that Nilson had low back pain that radiated into her left leg, and numbness in both feet. In January 1990, Dr. Arazi noted that she had chronic intractable low back pain. He stated that he believed that she could do sedentary work.
 In 1988 and 1990, Nilson saw Dr. Kennedy and Dr. See, each for single visit consultations. Both doctors believed that she could return to work, so long as it did not involve regular or heavy lifting.
 Throughout 1990 and 1991, Nilson saw Dr. Dorr frequently. He noted that he had tried an epidural steroid injection, physical therapy, a pantallon cast, and pain-killers,[2] none of which had provided much relief. In July 1990, Dr. Dorr was of the opinion that Nilson had a permanent physical impairment that made it hard for her to tolerate prolonged standing, but that she could probably do sedentary work. In April 1991, Nilson returned to Dr. Dorr complaining of continuing pain in her back, numbness in her feet and pain in her legs if she was active. He recommended an MRI. After the MRI, Dr. Dorr stated that Nilson was disabled. He asserted that she could not climb, stoop crouch or crawl; she could only sit for two hours in an eight-hour day, and for no more than 1/2 hour continuously.
 Testimony by Nilson and Her Husband
 Both Sherry Nilson and her husband, Russell, testified before the ALJ. Nilson alleged that she had severe, almost constant pain in her back and numbness in her feet. She stated that she was taking pain-killers, using a TENS unit four to six hours a day, a heating pad and hot baths to ease her pain. She described her activities as very limited--occasional housework and care of her child. She stated that she lay down 5-6 hours a day; walked for 1/2 hour, which hurt her legs: and rode a stationary bike for 20 minutes as prescribed therapy. Mr. Nilson testified that his wife frequently woke up at night on account of the pain and that she could not bend over to tie her shoes or bathe her daughter.
 I. Standard of Review
 The decision of the district court granting summary judgment is reviewed de novo. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir.1985). This court will affirm a denial of benefits when the Secretary's decision is supported by substantial evidence and is free from legal error. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989). In making this inquiry, the court must look at the record as a whole, not merely the evidence supporting the Secretary's decision. Id. It may not affirm the Secretary's decision merely "by isolating a specific quantum of supporting evidence." Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).
 II. Listings
 A. Vertebrogenic Disorder[3]
 The ALJ follows a five-step sequential process in evaluating disability claims:
 First, the claimant must not be currently working. Second, the claimant must have a severe impairment. Third, the impairment must be of equal severity and duration to those listed in an appendix. If these three requirements are satisfied, the claimant is found disabled. If the third is not, the Social Security Administration proceeds to step four, and determines whether the impairment prevents the claimant from performing his past work. If not, the claimant is not disabled. If the claimant cannot perform his past work, then SSA reaches the fifth and final step: The claimant will be found disabled if he cannot perform any other work which exists in significant numbers in the national economy.
 Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir.1989) (citations omitted).
 Under the five-step disability analysis, if the claimant is not working and has a severe impairment, the claimant is found disabled if his impairment is of equal severity and duration to that listed in the appendix. He must also meet all the criteria in the listing for that diagnosis. See, e.g., Young v. Sullivan, 911 F.2d 180, 181 (9th Cir.1990); 20 C.F.R. Sec. 404.1525(d).
 To meet the listing for vertebrogenic disorder, the claimant must have, inter alia, "pain, muscle spasm, and significant limitation of motion in the spine." 20 C.F.R. Pt. 404, Subpt. P, App. 1 Sec. 1.05(c). There is sufficient evidence in the record to support the ALJ's finding that Nilson did not qualify under the listing. Thus, the ALJ did not err in finding that she did not meet the listings criteria. See Allen v. Heckler, 749 F.2d 577; 579 (9th Cir.1984).
 B. Obesity Listing
 Nilson also contends either that she meets the listing for obesity or that her weight in conjunction with her spinal impairment place her within the Listings. There is no evidence in the record showing that she ever weighed 242 pounds, one of the criteria for a woman of her height to meet the obesity listing. 20 C.F.R. Pt. 404 Subpt. P App. 1 Sec. 9.09. Nilson's claim that her combination of symptoms places her within the listings even if she does not meet the criteria for any single listing is meritless.
 III. The ALJ's Finding on Step Four
 The ALJ erred in his determination that Nilson could perform her past work as a systems operator. He failed to accord proper weight to the opinions of her treating physicians.
 Although the ALJ has discretion to resolve questions of credibility, the opinion of the claimant's treating physician must be accorded "special weight." Burkhardt v. Bowen, 856 F.2d 1335, 1339 (9th Cir.1988). The ALJ's reasons for rejecting the treating physician's opinion must be "clear and convincing." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.1989). Under the "one-shot" rule that this circuit has adopted, the ALJ must accord greater weight to the opinions of treating physicians than those who see a patient once. Murray v. Heckler, 722 F.2d 499, 501-02 (9th Cir.1983). The ALJ may not reject the treating physician's opinion merely because it is not supported by objective findings--rather he must give weight to the "subjective aspects" of the treating doctor's opinion. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).
 Both Dr. Dorr and Dr. Arazi, who clearly qualify as treating physicians, believed that Nilson could do, at most, sedentary work. Despite their conclusions, the ALJ found that she could continue her past work as a systems operator. The record shows, that Nilson's past work as a systems operator was not a relatively sedentary activity because it required "a good deal of walking, standing, [and] reaching."[4]
 The ALJ did not give sufficient reasons for failing to credit the opinions of Nilson's treating physicians that she could do, at most, sedentary work. He cited the 1988 opinion of Dr. Kennedy and the 1990 opinion of Dr. See, who both believed that Nilson was capable of light work as long as no heavy lifting was required. However, neither doctor was Nilson's treating physician; they were evaluative physicians who saw Nilson only once. The ALJ erred because he failed to set forth clear and convincing reasons why he chose to credit the opinions of the "one-shot" non-treating physicians, over those of Drs. Arazi and Dorr, who saw her numerous times over years. Murray, 722 F.2d at 501-02.
 The ALJ also did not credit Dr. Dorr's 1991 opinion that Nilson was disabled because it contradicted his 1990 opinion that she could do sedentary work. This "contradiction" is irrelevant to the finding in step four because Dr. Dorr did not believe that she could do her old job in either 1990 or 1991. Because the record clearly shows that her condition did not allow her to resume her past work, we need not remand for additional evidence on this issue. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987).
 IV. The ALJ's Finding on Step Five
 The ALJ not only found that Nilson could resume her former work, but also concluded at step five that she could perform other jobs that exist in significant numbers in the national economy. Nilson contends that the ALJ erred by not giving sufficient weight to the 1991 opinion of Dr. Dorr, because it was the latest opinion on Nilson's disability and it was the only opinion based on her 1991 MRI results.
 We conclude that the ALJ did not set forth sufficient reasons in the record to justify rejecting the latest opinion of Dr. Dorr that Nilson could only sit for 2 hours in an eight-hour day and that she was disabled. Dr. Dorr is a treating physician; his opinion is the most recent one in the record, and he is the only doctor who considered the results from the MRI, which is a powerful diagnostic tool. The ALJ does not discuss or even refer to the MRI. He simply states that Dr. Dorr's April 25, 1991 opinion is inconsistent with his 1990 opinion that Nilson could do sedentary work and relies on a lack of any significant change in her condition since that time. That is not sufficient in this circuit. Moreover, the ALJ may not reject the treating physician's opinion merely because it is unsupported by objective findings--rather, he must give weight to the "subjective aspects" of the treating doctor's opinion. Embrey, 849 F.2d at 421-22.[5] The lack of objective evidence of change between Nilson's condition in 1990 and 1991 is an insufficient reason to discredit Dr. Dorr's 1991 subjective opinion. See id. We therefore remand for further consideration of the MRI results and the 1991 opinion of Dr. Dorr. See Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.1985) (finding the most recent report by a treating physician to be the most probative). We note that because the MRI and Dr. Dorr's evaluation were completed shortly before the hearings, it would be appropriate for the ALJ to reopen the hearings in order to receive any additional evidence that may be relevant.
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Circuit Rule 34-4
 
 
 **
 Pursuant to P.L. No. 103-296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Commissioner" throughout this opinion for the sake of convenience
 
 
 ***
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, Sitting by designation
 
 
 d
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The ALJ, John Madden, Jr., denied disability benefits after the May, 1 1991 hearing. The Appeals Council denied the request for review of the hearing decision on August 14, 1991; therefore the ALJ's decision become the Commissioner's final decision. Nilson timely appealed to the United States District Court for the District of Montana
 
 
 [2]
 In October, 1987 Dr. Arazi stated that Nilson was taking too many Fiorinals for her pain and recommended that she severely curtail her usage
 
 
 [3]
 "Arising in a vertebra or in the vertebral column." Dorland's Illustrated Medical Dictionary, p. 1819 (28 Ed. 1994)
 
 
 [4]
 "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally...." 20 C.F.R. Sec. 404.1567(a). Nilson's testimony and that of the vocational expert show that systems operation requires more than occasional standing or walking
 
 
 [5]
 Nilson also contends that the ALJ erred in discrediting her pain testimony and that of her husband. We do not reach that issue here because the ALJ may reconsider their testimony as a result of his evaluation of the MRI and Dr. Dorr's most recent opinion. Although the ALJ may reconsider the pain testimony in light of the medical evidence, we remind him that credible excess pain testimony can exist without objective medical findings that support the existence of the degree of pain alleged. See Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.1989)