Barbara J. PETERSEN,
Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 05–35496.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2006.

Filed Dec. 20, 2006.

brief is required to fully examine "all the proceedings"); *Balfour,* 814 P.2d at 1079.

Amy M. Gilbrough, Esq., Elie Halpern & Associates, PS, Olympia, WA, for Plaintiff–Appellant.

Liva Jamala Edwards, Esq., SSA—Social Security Administration Office of the General Counsel, Brian C. Kipnis, Esq., USSE—Office of the U.S. Attorney, Seattle, WA, for Defendant–Appellee.

Before: ALARCON, RYMER, and BERZON, Circuit Judges.

* This disposition is not appropriate for publication and may not be cited to or by the courts

## MEMORANDUM *

Social Security disability benefits claimant Barbara J. Petersen appeals the district court's affirmance of the Commissioner's denial of benefits. We reverse and remand.

### I.

■ The ALJ first erred by improperly rejecting Petersen's treating neurologist's retrospective diagnosis. In 1999, Dr. Wambaugh diagnosed Petersen as having had multiple sclerosis ("MS") since at least 1991. The ALJ failed to credit Dr. Wambaugh's diagnosis by concluding that Petersen had only "possible multiple sclerosis."

The opinion of a treating physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1995). The ALJ's only stated reason for rejecting Dr. Wambaugh's diagnosis is that it was rendered retrospectively. It is well established in this circuit that such a rationale is legally insufficient. *See, e.g., Morgan v. Comm'r,* 169 F.3d 595, 601 (9th Cir.1999); *Lester,* 81 F.3d at 832; *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1461 & n. 5 (9th Cir.1995); *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988). Because the ALJ failed to provide a legitimate reason for his decision not to credit Dr. Wambaugh's diagnosis, the diagnosis must be credited.

### II.

■ Once Dr. Wambaugh's diagnosis is credited, the ALJ's conclusion at step two that Petersen had only "possible multiple sclerosis" is not supported by substantial evidence. *Young v. Sullivan,* 911 F.2d

of this circuit except as provided by 9th Cir. R. 36–3.

180, 183 (9th Cir.1990). At step two of the sequential disability analysis, Petersen was required to show that she had a severe medically determinable impairment or combination of impairments prior to her date last insured, December 31, 1993. *See id.* § 404.1520(a)(4)(ii). To prove the existence of a medically determinable impairment, Petersen was required to provide, first, objective evidence of "medical signs and laboratory findings." *Id.* § 404.1529(a).

To establish that she had MS before her date last insured, Petersen offered Dr. Wambaugh's 1999 opinion, which cited documentation from two different neurologists finding Petersen had a hyperreflexia and bilateral Babinski sign in 1991. The record also shows a number of additional clinical and diagnostic signs of Petersen's neurological abnormalities during the relevant time period.

As noted above, the ALJ erred in rejecting Dr. Wambaugh's opinion on the basis that it was retrospective. His diagnosis, and the objective medical signs and laboratory tests supporting it, are uncontradicted in the record.[1] They establish that Petersen had MS, a medically determinable impairment, before her date last insured. We therefore must reject the ALJ's conclusion that Petersen had only "possible multiple sclerosis," as that conclusion is not supported by substantial evidence.

### III.

The ALJ also erred in rejecting the testimony offered by Petersen and her husband.

**A.** If a claimant is able to "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and there is no evidence of malingering, the ALJ may only reject the claimant's symptom testimony by providing "specific, clear and convincing reasons for doing so." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). Petersen provided objective medical evidence of MS, a degenerative knee disease, seizure disorder, and carpal tunnel syndrome. These underlying impairments could reasonably be expected to cause the symptoms of which Petersen complained.

There has been no finding that Petersen malingered, nor does the record support such a conclusion. As such, the ALJ could only reject Petersen's testimony by providing clear and convincing evidence. He failed to do so. The ALJ's only stated rationale for not crediting Petersen's testimony was that she conflated the past and present tenses when describing incidents allegedly occurring before her date last insured. A review of Petersen's testimony makes clear there is no basis for this conclusion; her testimony clearly concerned her condition during the relevant time period. The ALJ therefore erred in failing to consider Petersen's subjective symptom testimony.

**B.** The ALJ also failed adequately to account for the testimony offered by

---

1. The testimony of Dr. Aigner is not to the contrary, as he was concerned with the extent to which Petersen's medical records show she was actually functionally impaired during the period in question. Moreover, even if one were to conclude that Dr. Aigner testified that Petersen did not have MS before her date last insured, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester,* 81 F.3d at 831. Here, the ALJ offered no other legally tenable reason to reject the diagnosis offered by Dr. Wambaugh, who both examined and treated Petersen before and after her date last insured. Accordingly, even if Dr. Aigner had contradicted Dr. Wambaugh's MS diagnosis, that would not be enough to sustain the ALJ's conclusion.

Petersen's husband, Ralph Petersen ("Ralph"). Lay witness testimony as to a claimant's symptoms "is competent evidence that an ALJ must take into account," unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001).

The ALJ used the same rationale in rejecting Ralph's testimony that he did in rejecting Petersen's. It is no more valid here. The record shows that Ralph properly spoke in the past tense when he described Petersen's limited functional capacity during the period in question.

■ Nor was the ALJ's error harmless. Ralph offered the only corroboration of Petersen's symptom testimony. Fully crediting Mr. Petersen's statements provides substantial support for his wife's description of her symptoms. *See Stout v. Comm'r,* 454 F.3d 1050, 1056 (9th Cir.2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). The ALJ's failure to consider Ralph's testimony was not harmless.

### IV.

■ Because the ALJ's conclusions regarding the MS diagnosis and the Petersens' functional impairment evidence cannot stand, the Commissioner's argument that the ALJ properly rejected Petersen's MS at step two because it was not shown to be severe is not persuasive. A diagnosis of MS alone cannot satisfy the step two inquiry. Petersen must show also show

her medically discernable impairments are severe. 20 C.F.R. § 404.1520(c). The ALJ correctly noted that Dr. Wambaugh's opinion did not attest to the level of functional impairment Petersen suffered before her date last insured. However, the ALJ was required to consider subjective symptom testimony, in addition to medical evidence, when assessing the severity of Petersen's MS. 20 C.F.R. § 404.1529(d)(1). Because we hold the ALJ improperly rejected the testimony offered by Petersen and her husband, it is necessary to remand for a decision on the severe impairment question premised on a proper view of the record.

### V.

■ We also hold the ALJ erred by not acknowledging Petersen's obesity and considering it in combination with her other identified ailments. The Commissioner has issued a Ruling specifically addressing the role of obesity in disability assessments.[2] Social Security Ruling 02–1p (2002), 2000 WL 628049, provides that obesity can be a severe impairment if, when considered alone or combined with other impairments, it causes more than a slight limitation on an individual's ability to perform basic work. *Id.* at *4. In assessing the severity of obesity, the Commissioner has ruled that an "individualized assessment of the impact of obesity on an individual's functioning" is necessary. *Id.* The Ruling also provides that, if obesity is found to be a medically determinable impairment, "any functional limitations resulting from the obesity" must be considered in the RFC assessment. *Id.* at *7.

---

**2.** "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." *Bunnell v. Sullivan,* 947 F.2d 341, 346 n. 3 (9th Cir.1991). Although they do not have the force of law, the rulings represent the Secretary's interpretation of its regulations. *Id.* We therefore give them deference unless they are inconsistent with the statute or regulations. *Id.*

The record in this case contains numerous explicit references by Petersen's treating physicians to her obesity before her last insured date of December 31, 1993. Even the Commissioner's expert testified to Petersen's obesity during the hearing. Nonetheless, the ALJ's decision contains no mention of her weight.[3]

■ The Commissioner argues that the failure to consider whether Petersen's obesity constitutes a severe impairment is harmless error, "as no functional limitations can be linked to this impairment." However, it is the ALJ's responsibility to determine the effect of a claimant's obesity on her other impairments, as well as its effect on her overall health and ability to work, given the existence of other impairments. *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir.2003). Obesity was evident from the record, and was implicitly raised in Petersen's report of symptoms. Accordingly, the ALJ was required to develop the factual record necessary to determine the impact of Petersen's obesity. *See id.* at 1183. By failing to discuss and consider Petersen's obesity in the disability analysis, the ALJ erred.

## VI.

■ Finally, we reject Petersen's contention that the ALJ de facto reopened her denied 1991 application for benefits in his 2003 decision. Although he considered medical evidence from before Petersen's alleged date of onset, he did not make a determination " 'on the merits' [of] the issue of the claimant's disability during the already-adjudicated period." *Lester*, 81 F.3d at 827 n. 3. This absence of any such determination is clear from his findings, which addressed only the period from June 21, 1991 through December 31, 1993. The ALJ therefore did not decide the merits of Petersen's earlier disability application, and consequently did not de facto reopen it. This Court thus has no basis for ordering the Commissioner to consider the previous application reopened upon remand.

## VII.

We therefore reverse and remand for consideration of how the lay testimony offered by Petersen and her husband affects the sequential analysis at step two and all further steps, as well as for consideration of the impact of Petersen's obesity at step two and all further steps.

REVERSED AND REMANDED.

Judge RYMER concurs in the result.

---

3. Our decision in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir.2005), is distinguishable. In *Burch*, the ALJ discussed the claimant's obesity and considered it in his RFC analysis. *Id.* at 683. However, he did not mention obesity in his step two analysis. *Id.* at 682. The *Burch* court assumed without deciding that this was legal error but concluded that the error was harmless because it would not have impacted the ALJ's analysis at either step four or five. *Id.* At step four, the court found the claimant could not have established that she met the listing requirement or its equivalence based on the record, and at step five, the ALJ explicitly noted the impact of the claimant's obesity on her back problems. *Id.* at 682–83. Given that the ALJ in this case did not address Petersen's weight in either the step two *or* step five contexts, the ALJ's failure to consider the impact of her obesity cannot be considered harmless error under *Burch*.