KLEINFELD, Senior Circuit Judge, dissenting: I respectfully dissent. The ALJ’s credibility determination was adequately supported.[1] Even if we might disagree with his finding that Revels could perform light work, it was nevertheless supported by “substantial evidence.”[2] I. This case does not turn on whether Revels has fibromyalgia. Instead, the issue is Revels’ “residual functional capacity.” Based on the evidence in the record, the ALJ found that Revels could perform light work. In so doing, he found that Revels’ “statements concerning the intensity, persistence and limiting effects” of her fibro-myalgia were “not entirely credible” because they were inconsistent with medical evidence and her own testimony. According to the majority, this was incorrect because Social Security Ruling 12-2p[3] says that fibromyalgia is actually characterized by inconsistent symptoms. But the majority errs because it reads Ruling 12-2p too broadly and because it gives short shrift to Rollins v. Massanari.[4] A. Ruling 12-2p provides extensive guidance about what constitutes a fibro-myalgia diagnosis.[5] It notes that fibro-myalgia symptoms often come and go. But when it comes to the residual functional capacity of a person with fibromyalgia, this is what Ruling 12-2p says: “For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have ‘bad days and good days.’”[6] And when it comes to evaluating “the intensity and persistence” of a person’s symptoms, Ruling 12-2p says that the ALJ considers “all of the evidence in the case record” if the claimant’s testimony is not backed up by “objective medical evidence.”[7] The ALJ’s determination that Revels can perform light work is consistent with Ruling 12-2p. The record spans a thousand pages and describes multiple doctors treating and examining Revels between 2010 and 2012. That counts as a “longitudinal record.” Based on that record, the ALJ found Revels to be only partially credible because objective tests—like Dr. Ruggeri’s analysis of her hand functioning—contradicted Revels’ own function reports. That is not the same as saying that Revels is only partially credible because her symptoms were inconsistent over time. Revels’ symptoms may “wax and wane,” but having good days and bad days does not contradict the ALJ’s findings that she had enough capacity to perform light work. B. Not only is th¿ ALJ’s credibility determination consistent with Ruling 12-2p, but it is also supported by precedent. In Rollins v. Massanari, we assumed without deciding that Rollins had a severe impairment of fibromyalgia.[8] We then held that when determining functional capacity, Rollins’ subjective pain testimony could be discounted by her “testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth.”[9] This was despite the fact that Rollins was “somewhat equivocal about how regularly she was able to keep up with all of these activities.”[10] Rollins controls here. Revels believes that her pain and need for breaks during daily activities means that she lacks the capacity for light work. But even though she may have to take breaks in her chores, it was permissible for the ALJ to find that Revels’ activity level is inconsistent with the severe pain that she describes. Revels describes her pain as being a constant 7 out of 10, sometimes increasing to 8, 9, or even “greater than 10.” To a doctor, that means that Revels experienced constant “severe” pain, sometimes increasing to the “worst pain imaginable.”[11] It was reasonable to infer that someone in that much pain cannot clean a house or take care of infants, even with breaks. This inference is supported by Dr. Rowse’s statement that Revels’ claims were inconsistent with her activities. The ALJ discussed Revels’ inconsistencies in his decision, thus giving compelling reasons for partially discounting her testimony. Despite the majority’s statement to the contrary, Rollins’s approach is not “questionable.” It is irrelevant that Rollins was decided before Ruling 12-2p was issued. Even if Ruling 12-2p had been in effect, Rollins would have been decided the same way: Rollins would have met the requirements for a fibromyalgia diagnosis, but her residual functional capacity would- have shown that she could still perform some work. II. Just as the ALJ properly found that Revels was not wholly credible, he also permissibly dismissed medical testimony supporting Revels’ position. Revels’ examining physician, Dr. Nolan, provided only conclusory reasons for his findings, and almost, all of his opinions were check-box forms. His description of Revels’ medical issues was also contradicted by objective medical evidence and Revels’ own activity levels. And “when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.”[12] The findings of Revels’ physical trainer, Richard Randall, were not supported by objective medical tests, and they were contradicted by Dr. Ruggeri’s opinion. Also, Randall is not, .an “acceptable medical source” under the Social Security regulations,[13] so he is not entitled to the same deference that a physician receives.[14] The questionnaire signed by Dr. Wolf-son and Nurse Practitioner Jacqueline Mager was a check-box form that is contradicted by objective medical evidence and Revels’ ability to perform tasks like cleaning and caring for her grandchildren. Because Ms. Mager is a nurse practitioner, her opinion also receives less deference than a physician’s (at least to the extent she did not work under Dr. Wolfson’s “close supervision”).[15] The ALJ therefore gave each of these testimonies its due. III. Revels evidently has fibromyalgia. She doubtless feels pain or discomfort much of the time. Whether its severity prevents her from working is a question different from whether she has the disease. Medical conditions affect different people differently, and just 'because someone says they feel excruciating pain does .not make it so. In this appeal, Revels does not establish that the ALJ’s conclusions were unsupported by substantial evidence. We should have affirmed the ALJ’s decision. Therefore, I respectfully dissent. . See Morgan v. Comm’r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Turner v. Comm’r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010) (upholding a partial credibility finding because of discrepancies in the claimant’s testimony). . See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) ("Substantial evidence means more than a mere scintilla, but less than a preponderance.”) (citations and quotation marks omitted). . 77 Fed. Reg. 43,640 (July 25, 2012). . 261 F.3d 853 (9th Cir. 2001). . See 77 Fed. Reg. at 43,641-43. . Id. at 43,644. . Id. at 43,643. . 261 F.3d at 857. . Id. . Id. . Harald Breivik et al., Assessment of pain, 101 Brit. J, of Anaesthesia 17, 18 (2008); see Chris Pasero & Margo McCaffery, Pain Assessment and Pharmacologic Management 56 (2011); Amelia Williamson & Barbara Hoggart, Pain: a review of three commonly used pain rating scales, 14 J. Clinical Nursing 798, 799-800 (2005).' . Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ "permissibly rejected” three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions”). . 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006); see also 82 Fed. Reg. 5,844, 5,846-47 (Jan. 18, 2017). . Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). . Id.; 71 Fed. Reg. at 45,594. The new rule defining nurse practitioners as "acceptable” sources had not yet taken' effect. See 82 Fed. Reg. at 5,844, 5,846.