## David W. Sharp, Plff. in Err., *v.* City of Erie.

General instructions to the jury in an action against a town for damages for a personal injury sustained through a defect in a highway, where the plaintiff's case depends chiefly on his own testimony, the truth of which is denied by the defense, to the effect that if a plaintiff testifying in his own behalf to his own personal injuries were found false in material particulars he might be treated as false in all; and explaining how his testimony in collateral matters ought to be compared with that of witnesses called to prove it untrue,—*Held* correct.

(Decided May 17, 1886.)

Error to the Common Pleas of Erie County to review a judgment for defendant in an action of trespass on the case for negligence. Affirmed.

The facts appear in the following portions of the charge of GALBRAITH, P. J., in the court below:

---

NOTE.—Self-contradiction of a witness affords no ground for the rejection of his testimony entirely. Fermanagh Twp. v. Milford Twp. 4 Pa. Super. Ct. 573.

The plaintiff's claim is for damages alleged to have been sustained by him in consequence of a fall which he received in passing over a sidewalk in the city of Erie on the 17th of January, 1882.

At a point in a plank sidewalk on Cherry street there was a defect from a plank having been broken or split, leaving a hole in the sidewalk about two and a half to three feet long and six to eight inches wide at the widest end, and of the depth, over the level of the sidewalk or the surface of the ground, of about a foot.

The plaintiff was passing north on the sidewalk, and alleges that he accidentally fell by putting his foot through this hole; and that he fell backwards and sidewise in such a manner that he injured his back to such an extent that he became helpless and immediately insensible; and that from this hurt paralysis has resulted to his limbs, so that he has never since been able to use them.

The plaintiff claims to be paralyzed from the hips down.

It is for you to say, from the evidence, how far this paralysis extends. That it exists, there seems to be no question.

On the part of the plaintiff it is contended that the paralysis resulted from the injury that he received on the sidewalk. On the part of the defense it is urged that the plaintiff had sustained severe injuries in a previous year by falling from the roof of a building, and that it resulted in a long-continued disability and in a depraved condition of the system; that he was not a sound man at the time of this occurrence, and that lying for six weeks in his bed in a house having under it a pit or cellar partially filled with stagnant and putrid water, into which had been thrown slops, filth, and garbage, paralysis in fact supervened from disease and from this malarial source, and not from the injury on the sidewalk.

On the part of the defense it is further alleged that, as against the truthfulness and honesty of the plaintiff's claim, it has been conclusively shown that he has falsified in material matters testified to by him.

It would seem apparent that as the paralytic state of the plaintiff is shown, and the only question as to that point is its extent,

it comes to the question as to the real cause of this condition; and as this depends largely on the degree of credit to be given to the evidence of the plaintiff, it becomes a very material question for you to determine the degree and amount of credit you will give to his evidence [for if you find that he has wilfully misrepresented in any material particular, then it will justify you not only in disregarding his evidence, but it will throw a suspicion upon his whole case].

[The maxim of the law is that a witness, party or otherwise, who is found by the jury to be false in any one matter, is to be considered as having testified falsely in all. That is as old as the law itself.

Now, in a case of this kind this rule comes in with the greater force, because what necessarily makes up and constitutes the proof in such a case as this largely comes from the plaintiff himself.]

The medical testimony as to the condition of the plaintiff is, of course, a leading feature; and it is said that this corroborates the plaintiff. But the medical testimony is made up from the conclusions of the medical experts, derived from the feelings any symptoms as detailed to them by the patient, and from their observations of his actions and his words. His words and actions in their presence must constitute to a very large extent the basis upon which they form their opinions. His statements to them as to his sensations and symptoms may be true or untrue, and his actions may be a mere simulation of the disability under which he claims to be laboring. Both depend upon his truth and honesty; and the experts are in fact giving to a large extent only what they have derived in one way and another from the plaintiff himself. There is no infallible test by which simulated paralysis can be detected.

So far, then, as medical testimony is concerned, it all comes back to the plaintiff himself, and depends for its value very largely if not altogether upon his integrity, to determine what degree of credit is to be given to the plaintiff.

In connection with that consideration comes the evidence adduced here on the part of the defendant, by which it is claimed

that this plaintiff is not a truthful man, but that he has been, convicted of falsehood.

On his cross-examination, Mr. Sharp was asked a number of questions with a view of attacking his credit; and it may be proper to refer to those questions and to his answers.

He said: "I never went on long crutches. I used them to help me, but couldn't use them for walking; never have stood upon my legs or walked upon them since. Have been up in the loft with the assistance of my wife and daughter, and not otherwise. I don't know Anna Thompson. I never saw her until last trial. Anna Thompson did not come to our house for shoestrings. I didn't get up in her presence and walk."

Mrs. Wallace testifies that she saw him on long crutches. She testifies that she was at the house of the plaintiff and saw him in the attic. He explains that he was helped up there by his wife and daughter. He was not helped, according to that witness, but swung himself up in such a way as is claimed by the defense a man could not have done who had paralysis of the limbs, as claimed by the plaintiff.

Then you have the evidence of Anna Thompson. This young girl testifies that she was going to a party on the 15th of February, and that she had occasion to use shoestrings and hairpins at once, and as she knew they peddled these things (Sharp or his wife) and that was the nearest, she went there and found Sharp alone, and that he got up and walked to the back room without any crutch and brought in a bag containing these articles, and then got down on the floor and picked them out, and she paid for them and left.

It appears from the question put to the witness that on the former trial he denied knowing her. Says he never saw her until this case was tried before, and that the whole story of hers is a fabrication and no truth. Is this story of the girl's true? If it is, then Sharp's is false. Mr. Little testifies that he saw him walking out to the back of his lot without crutches. He says that he walked lame and stooped, but didn't use crutches.

Another transaction is introduced here; he was asked the question and answered that he didn't on a certain occasion stand up in his wagon and beat his horse; that no such occurrence took

place; that he didn't beat his horse to attract the attention of the neighbors, and much less stand up and beat the horse.

The city has introduced Anna Thompson, who testifies that he not only did so, but that it attracted the attention of the neighbors; and, in corroboration of Miss Thompson, Miss Smith testifies that she was there, and that the plaintiff did stand up; that she saw the plaintiff beating the horse, and that it was a short stick, and he could not have reached the horse if he was on his knees, but that he stood up. And she says that she cannot possibly be mistaken; that she saw his feet, and he stood up and beat his horse.

He says that he didn't assist in cutting trees down on the lot named by the witness Caldwell; that he cut some poles, but that he didn't cut trees nor assist in lifting them in his wagon. Mr. Caldwell swears that he did, and Mr. Caldwell's credit is attacked by a witness who says that in the courtroom Caldwell came and had a conversation with him and said: "Hadn't you rather swear for the city for $4 than for the other side for nothing?"

And this witness testifies to this. It is not corroborated by any other witness, and Caldwell denies it. But it becomes less important to consider this evidence as to what Caldwell said to Burns from the fact that there was another witness present who saw this same thing testified to by Caldwell,—the boy, Willie Burns,—and you will judge of his truthfulness from his manner of testifying. This lad, fifteen years of age, swears that he was there, and he described these occurrences substantially as they are described by Caldwell. He says that the man did assist in cutting these trees and assisted in lifting them on the wagon.

[You have another transaction which, in my estimation, is of serious consideration], and this is the evidence of Mrs. Johnson. That doesn't depend on the mere credibility of Mrs. Johnson as weighed against that of the plaintiff, because the transaction took place in court, admitted now by the plaintiff. At the former trial, according to the evidence, Mr. Sharp was asked on the stand as to the alleged conversation with Mrs. Johnson at his house, and as to his walking across the floor there without crutches. He denied any such conversation and then he said

that he didn't know such a person as Mrs. Johnson.   Then this old lady was called to a conspicuous place, and he was asked if he knew this person, and he said:   "I do not, I never saw her before."

Now the plaintiff undertakes to explain it by saying that he was misled by her being called Johnson when he knew her as Mrs. Walker.

[Now, I have no hesitation in saying (it is for you to say how this is) that if this is as it appears to be, it ought to be an end of this case.]   A man coming in with such a claim and convicted of deliberate perjury in the face of the court ought not to be credited.   It is for you to say how far that is made out. The exhibition of this woman to the plaintiff, and his denying any knowledge of her, and whether his explanation has satisfied you that he was misled by her name, is entirely for you.

Mr. and Mrs. Chapman—to a conversation with whom Mr. Sharp's attention was called, and which he denied—were called and they testified that they did hear him say that he had received a terrible or severe injury from being struck in the back with a piece of lumber.

Now as to the extent of the disability; he says it is from the hips down; that he has no use of his limbs from the hips down. [Where a man is slightly injured and comes in claiming that he is more severely injured than he is, that is a falsity that ought to go against his case, and in deciding doubtful points of facts against him it taints the case.   It throws a cloud of suspicion over the case.   It makes it dark and dubious, where there is falsity shown on part of the plaintiff.]   That is for you to determine, whether it is here or not.

You have a man in the prime of life, coming along a sidewalk, his foot going through perhaps twelve inches to the ground, and instead of falling forward he falls back and is deprived of sensibility and consciousness, although no wound is apparent except this injury on his back.   It is for you to weigh the probabilities of the truth of such a statement.   The man was not struck, apparently, on his head, but he says on his back.

It is necessary for the plaintiff, in order to recover, not only to make out that he received this fall, but that the injuries are

in consequence of that fall. It is for him to make out his case, and it is for you to decide according to the preponderance of the evidence.

[If he has satisfied you that in consequence of this defective sidewalk he had this fall and received injuries that resulted in this paralysis, he is entitled to recover a verdict at your hands. If he has not, it is the end of the claim]; and you will judge of the whole case from the evidence.

[If the plaintiff has been convicted of wilful falsity in any material particular, you should throw out his evidence.] It would throw a suspicion over his suit which should at least lead the jury to scan it with extremely critical care.

The jury returned a verdict for defendant, and plaintiff took this writ, assigning for error that the whole tenor of the charge was unfair and prejudicial to the plaintiff and partial to the defendant, and particularly the language of the court indicated by the above brackets.

*John C. Brady, Allen & Rosenzweig,* and *J. Ross Thompson* for plaintiff in error.

*S. A. Davenport* and *Theo. A. Lamb* for defendant in error.

PER CURIAM:

All the points submitted by the plaintiff were affirmed by the court. The objection is to several portions of the general charge. Numerous extracts therefrom are presented for our consideration. We have examined all of them and considered their bearing in the case. We are not able to find anything therein which is so inadequate or misleading as to demand a reversal of the judgment.

Judgment affirmed.