Janice SMITH, guardian ad litem on behalf of Jeanette E. ENGE, a minor, Plaintiff,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security Administration,[1] Defendant.

No. CV 00–6440–RC.

United States District Court, C.D. California.

April 30, 2001.

---

**1.** Pursuant to Fed.R.Civ.P. 25(d)(1), Larry G. Massanari, Acting Commissioner of the Social Security Administration, is substituted for Kenneth S. Apfel as the defendant in the action.

**1130**

## MEMORANDUM DECISION AND ORDER

CHAPMAN, United States Magistrate Judge.

On June 19, 2000, Janice Smith, as guardian ad litem on behalf of her daughter Jeanette Enge, a minor, filed a complaint seeking review of the Commissioner's decision denying Jeanette's application for disability benefits. The plaintiff filed a motion for summary judgment on November 9, 2000, and the defendant filed a cross-motion for summary judgment motion on January 30, 2001. The plaintiff did

not file a reply. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

### I

On October 17, 1996, Jeanette applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383d, claiming she has been disabled since March 15, 1991, when she was almost three years old, due to asthma and breathing difficulties. Certified Administrative Record ("A.R.") 40–43, 56. Jeanette's application was initially denied on April 4, 1997, and was denied following reconsideration on July 15, 1997. A.R. 44–53. Jeanette then requested an administrative hearing, which was held before Administrative Law Judge Linwood Perkins, Jr. ("ALJ"), on April 23, 1998.[2] A.R. 20–21, 26. On May 20, 1998, the ALJ issuèd a decision finding that Jeanette is not disabled. A.R. 13–19. Jeanette then sought review by the Appeals Council; however, review was denied on April 18, 2000. A.R. 3–4, 8–9.

### II

Jeanette was born on July 17, 1988; she is now 12 years old. A.R. 40. When she was about three years old, Jeanette was diagnosed with asthma, A.R. 134, and she was treated at the Phoenix Medical Center, where she was prescribed Alupent[3] and a Proventil inhaler.[4] A.R. 161–63, 170–75. Since she was four years old, Jeanette has been treated by Leon O. Banks, M.D., who has diagnosed her as having "severe bronchial asthma," which has required her hospitalization on several occasions. A.R. 161–63. Further, Jeanette requires inhalation therapy at home and an inhaler at school. A.R. 163. Although Jeanette's asthma has responded to treatment, its chronic nature requires medication and a great loss of time from school. *Id.*

On April 4, 1996, when Jeanette was seven years old, she was admitted to Daniel Freeman Memorial Hospital for pneumonia, bronchospasms, and asthma. A.R. 150–60. Chest x-rays showed defined left lower lobe infiltrate and increased perihilar[5] markings with peribronchial cuffing with hyperinflation, consistent with obstructive airway disease. A.R. 159. Jeanette was treated with medication and discharged from the hospital on April 9, 1995. A.R. 150, 160. Jeanette was again admitted to Daniel Freeman on January 27, 1997, for pneumonia exacerbated by asthma. A.R. 140–49, 216–57. She was treated with medication, including prednisone.[6] Chest x-rays showed bilateral perihilar infiltrates. A.R. 147, 225.

On January 16, 1997, at defendant's request, Jeanette was examined by a con-

---

**2.** At the time of the administrative hearing, Jeanette was in the third grade. A.R. 31.

**3.** "Alupent is a bronchodilator prescribed for the prevention and relief of bronchial asthma and bronchial spasms (wheezing) associated with bronchitis and emphysema." *The PDR Family Guide to Prescription Drugs*, 21 (5th ed.1997).

**4.** Proventil is also called Albuterol, and is used to prevent and relieve bronchial spasms, especially those caused by asthma. *Id.* at 12, 478.

**5.** Perihilar means around the pulmonary hilum (the depression on the mediastinal surface of the lung where the bronchus and the blood vessels and nerves enter). *Dorland's Illustrated Medical Dictionary*, 767, 1260 (28th ed.1994).

**6.** Prednisone, also called Deltasone, is "a steroid drug ... used to reduce inflammation and alleviate symptoms in a variety of disorders, including rheumatoid arthritis and *severe cases of asthma.*" *The PDR Family Guide to Prescription Drugs*, 156, 462 (5th ed.1997) (emphasis added).

sulting physician, Efren S. Valenzuela, M.D., who found that she showed "no evidence of acute asthma attack or other pulmonary abnormalities." A.R. 134–37.[7] Dr. Valenzuela opined that, "[a]s of this time, [Jeanette's] asthma . . . continues to be controlled adequately with antiasthmatic medications and short courses of oral prednisone." A.R. 136. On April 3, 1997, a nontreating, nonexamining physician concluded that Jeanette has asthma, but that it is not severe and it is controlled adequately with medication. A.R. 128–31.

## DISCUSSION

### III

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying Jeanette disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Merrill v. Apfel,* 224 F.3d 1083, 1084–85 (9th Cir.2000); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir.1999). " 'Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.' " *Merrill,* 224 F.3d at 1085 (quoting *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1457 (9th Cir.1995)).

■ A child is disabled for the purposes of receiving SSI benefits if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i);

*Merrill,* 224 F.3d at 1085. "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

■ Regulations promulgated by the Commissioner establish a three-step sequential evaluation process to be followed in a child disability case. 20 C.F.R. § 416.924. In the **First Step**, the Commissioner must determine whether the claimant is working and the work is substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.924(b).[8] If the claimant is not engaged in substantial gainful activity, in the **Second Step**, the Commissioner must determine whether the claimant has a severe medically determinable impairment or combination of impairments; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, in the **Third Step**, the Commissioner must determine whether the claimant's impairment meets or medically or functionally equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals an impairment in the Listing, it is presumed to cause "marked and severe functional limitations," provided it also meets the duration requirement, and benefits are awarded. 20 C.F.R. § 416.924(d). When the claimant's impairment does not meet or equal an impairment in the Listing, or does not meet the durational requirement, the claimant is determined to be not disabled. *Id.*

---

**7.** Jeanette had "taken medications of prednisone orally and Albuterol inhalation a few hours prior to [Dr. Valenzuela's] examination. . . . " A.R. 136.

**8.** This Step, of course, is not determinative in the case of most minors.

Applying the three-step sequential evaluation process, the Commissioner found Jeanette is not engaged in substantial gainful activity. (Step One). The Commissioner then found Jeanette is not disabled because she does not have a severe medically determinable physical or mental impairment or combination of impairments.[9] (Step Two). The plaintiff, however, contends that the Commissioner's decision is not supported by substantial evidence, and further contends that Jeanette has a severe medically determinable impairment that meets or equals the requirements of Listing 103.03(c).

### IV

■ A severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes ... more than minimal functional limitations." 20 C.F.R. § 416.924(c); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir.1999). In assessing severity, the Commissioner must consider not only the plaintiff's medically determinable impairments but also such factors as the child's age, the effects of any chronic illness, the impact of any medication the child is taking, the effects of structured or highly supported settings, adaptions, time spent in therapy, school attendance, and pain and other symptomatology. 20 C.F.R. §§ 416.924a–416.924c, 416.928–416.929.

■ Here, the Commissioner's determination that Jeanette's asthma is not severe is not supported by substantial evidence in the record. First, the Commissioner failed to properly consider the opinion of Jeanette's treating physician, Dr. Banks, who diagnosed Jeanette with **chronic severe** bronchial asthma. The medical opinions of treating physicians are entitled to special weight. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418,

421 (9th Cir.1988). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987); *Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999); *see also* 20 C.F.R. § 404.1527(d)(2) (providing generally that more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)"). Therefore, "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725; *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (per curiam); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the Commissioner, in finding Jeanette's asthma is not severe, relied on the opinions of a consulting physician, Dr. Valenzuela, and an unidentified and nontreating, nonexamining physician. A.R. 18. In making this finding, the Commissioner implicitly rejected Dr. Banks's opinion that Jeanette's asthma is severe, and he did so without setting forth any reasons for rejecting Dr. Banks's opinion. This is legal error. *Smolen*, 80 F.3d at 1286.

Second, the Commissioner failed to properly consider the testimony of Jeanette's mother, Janice Smith, who stated that Jeanette has had asthma since she was a baby and that this condition is treated with an inhaler and an unidentified liquid medication. A.R. 27. Smith also stated that because she was frequently required to take Jeanette to the hospital to treat her asthma, Jeanette was provided

---

9. The Commissioner did not reach Step Three. *See* A.R. 18–19.

with a breathing machine in 1994. A.R. 28. Since that time, Jeanette has used a home inhalation machine three times a day, A.R. 27–29, and, even with the inhalation machine and other treatment, Jeanette needs to be treated by her physicians at least three to four times a month, and sometimes as often as two to three times a week. A.R. 29, 32–33. Smith further testified that Jeanette has been prescribed prednisone for her asthma, but was unable to state how frequently she received these prescriptions. A.R. 29–30. Finally, Smith also stated that Jeanette frequently has problems with wheezing, and that she cannot run, play, or walk long distances because of her asthma, and that she "cannot function" during asthma attacks. A.R. 30. Smith estimated that Jeanette misses about 7 days a month from school, and that such absences forced Jeanette to repeat the first grade. A.R. 30–31, 33, 38, 87.

▆▆▆▆ "In disability cases where the child is unable to adequately describe her symptoms, the Commissioner accepts the testimony of a person most familiar with the child's condition, such as a parent." *Brown v. Callahan,* 120 F.3d 1133, 1135 (10th Cir.1997); 20 C.F.R. § 416.928(a). Indeed, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001); *Merrill,* 224 F.3d at 1086; *Sampson v. Chater,* 103 F.3d 918, 922 (9th Cir.1996).

Here, the Commissioner implicitly rejected Smith's testimony in finding that Jeanette does not have a severe impairment, and in so doing, he did not provide a specific reason for implicitly rejecting this portion of Smith's testimony. This is legal error. *Merrill,* 224 F.3d at 1086. In fact, based on the record, the Commissioner should have found that Jeanette's symptoms cause more than "minimal functional restrictions," and thus, she has a severe impairment. Specifically, Smith's testimony established that Jeanette's illness requires her to frequently miss school and has resulted in her being held back a grade, that Jeanette's asthma is treated with home inhalation therapy three times a day, that Jeanette has been prescribed prednisone, a medication used to combat severe asthma,[10] that Jeanette frequently wheezes, that her asthma prevents her from running, playing, and walking long distances, and that Jeanette "cannot function" during asthma attacks. Moreover, the Commissioner erred in implicitly finding that, although Jeanette's problems at school are related to absenteeism, the absenteeism was not caused by Jeanette's asthma. A.R. 18. Clearly, Smith's testimony established that the reason for Jeanette's excessive school absences was, and is, her asthma.

Therefore, for the reasons set forth above, the Commissioner's determination that Jeanette does not have a severe impairment or combination of impairments is not supported by substantial evidence.

**V**

▆▆▆▆ The mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, is insufficient, in itself, to sustain a finding of disability. *Young v. Sullivan,* 911 F.2d 180, 183 (9th Cir.1990); *Key v. Heckler,* 754 F.2d 1545, 1549 (9th Cir. 1985). Therefore, an impairment will not be considered "to be one listed in appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment." 20 C.F.R. § 416.925(d);

---

**10.** *See* fn. 6 above.

*Young,* 911 F.2d at 184. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ." *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999) (citation omitted); 20 C.F.R. § 416.926. Even if an impairment does not meet the requirements of, or is not medically equal to, a listed impairment, the child may be found disabled if her impairment is functionally equal to a listed impairment. 20 C.F.R. § 416.926a.

Here, plaintiff contends that Jeanette's asthma meets the requirements of Listing 103.03(C)(2), which requires:

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic [11] bronchodilators with one of the following. . . .

2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12–month period[.]

The evidence, however, does not show that Jeanette meets or equals the requirements of Listing 103.03(C)(2). Although the plaintiff argues Jeanette receives "ongoing dosages of corticosteroids," the record is inconclusive on this point. Specifically, there is no evidence showing that Jeanette has been regularly treated with corticosteroids to the degree required by the Listing 103.3(C)(2).[12]

## VI

 The Court has authority to affirm, modify, or reverse the Commission-er's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990); *Gamer v. Secretary of Health & Human Services,* 815 F.2d 1275, 1280 (9th Cir. 1987).

 Here, the Commissioner erred at Step Two of the sequential evaluation analysis when he found that Jeanette does not have a severe impairment. Therefore, remand is appropriate to allow the Commissioner to go beyond Step Two.

## ORDER

IT IS ORDERED that: (1) plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied; and (2) the Commissioner's decision is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Decision, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

---

**11.** Sympathomimetic means "mimicking the effects of impulses conveyed by adrenergic postganglionic fibers of the sympathetic nervous system." *Dorland's Illustrated Medical Dictionary,* 1619 (28th ed.1994).

**12.** The records from Dr. Banks do not show his prescription of corticosteroid medication. A.R. 161–63. Similarly, to the extent they are legible, the records from her treating physicians at the Phoenix Medical Center also do not show steroid medication. A.R. 169–205, 212–14.